**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| POLARIS INNOVATIONS LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:22-cv-00347-JRG |
| | ) | |
| BROADCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT BROADCOM INC.'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

████████████████████

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................. 1

        A.      Broadcom Inc. Does Not Reside in this District and Does Not Have an
                Established Place of Business in this District ........................................ 2

        B.      The Plano Office is Controlled and Utilized by CA, Inc. ...................... 3

        C.      The Accused Products, Relevant Documentation, and Witnesses Are
                Located in the Northern District of California ...................................... 4

III.    VENUE IN THIS DISTRICT IS IMPROPER UNDER 28 U.S.C. § 1400(B) ................. 5

        A.      Legal Standard ...................................................................................... 6

        B.      Broadcom Inc. Does Not Reside in This District .................................. 6

        C.      Broadcom Inc. Does Not Maintain a Regular and Established Place of
                Business in This District ....................................................................... 7

                1.      The Plano Office Is Not a Regular and Established Place of
                        Business of Broadcom Inc. ........................................................ 8

                2.      No Agents Conduct Business of Broadcom Inc. at the Plano Office ....... 18

                3.      CA's Plano Office Cannot Be Imputed to Broadcom Inc. ...................... 23

IV.     THIS CASE SHOULD BE DISMISSED OR, ALTERNATIVELY,
        TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ..................... 26

        A.      This Action Could Have Been Brought in the Northern District of
                California ............................................................................................ 28

        B.      Private Interest Factors Favor Transfer to the Northern District of
                California ............................................................................................ 28

        C.      Public Interest Factors Favor Transfer to the Northern District of
                California ............................................................................................ 30

V.      CONCLUSION ................................................................................................ 30

██████████████████

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
 6 F.4th 1283 (Fed. Cir. 2021) ......................................................................... *passim*

*In re BigCommerce, Inc.*,
 890 F.3d 978 (Fed. Cir. 2018)........................................................................................7

*BillingNetwork Patent, Inc. v. Modernizing Med.*,
 No. 17 C 5636, 2017 WL 5146008 (N.D. Ill. Nov. 6, 2017)...................................27

*Board of Regents v. Medtronic PLC*,
 No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19, 2018) ...................12, 14, 25

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
 447 F.3d 411 (5th Cir. 2006) .......................................................................................24

*CA, Inc. et al. v. Netflix, Inc.*,
 Case No. 2:21-cv-00080 (E.D. Tex. Mar. 9, 2021) ...............................................8

*Celgene Corp. v. Mylan Pharms. Inc.*,
 17 F.4th 1111 (Fed. Cir. 2021) ............................................................14, 23, 24, 25

*Cheetah Omni, LLC v. NP Photonics, Inc.*,
 No. 6:13-CV-418, 2014 WL 11709437 (E.D. Tex. Mar. 28, 2014) .......................27

*In re Cray, Inc.*,
 871 F.3d 1355 (Fed. Cir. 2017)............................................................................ *passim*

*CUPP Cybersecurity LLC v. Symantec Corp.*,
 No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ..........................27, 30

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
 No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018).........................23

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009).....................................................................................28

*In re Google LLC*,
 949 F.3d 1338 (Fed. Cir. 2020)..........................................................................7, 18, 19, 20

*In re Hoffman-La Roche Inc.*,
 587 F.3d 1333 (Fed. Cir. 2009).....................................................................................30

█████████████████████

*Implicit, LLC v. CA, Inc.*,
  Case No. 2:19-cv-00038 (E.D. Tex. May 5, 2019) ................................................. 8

*K.Mizra LLC v. CA, Inc.*,
  Case No. 2:21-cv-00247 (E.D. Tex.) ..................................................... 26

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ................................. 6

*Nat'l Steel Car Ltd. v. Greenbrier Companies, Inc.*,
  No. 6:19-CV-00721-ADA, 2020 WL 4289388 (W.D. Tex. July 27, 2020) .......... 11, 23, 24, 27

*Niazi v. St. Jude Med. S.C., Inc.*,
  No. 17-cv-183-jdp, 2017 WL 5159784 (W.D. Wisc. Nov. 7, 2017) ....................................... 27

*Parallel Network Licensing LLC v. Arrow Elecs., Inc.*,
  No. 4:21-CV-00714, 2022 WL 1597364 (E.D. Tex. May 19, 2022) ..................................... 27

*Reflection, LLC v. Spire Collective LLC*,
  No. 17-cv-1603-GPC(BGS), 2018 WL 310184 (S.D. Cal. Jan. 5, 2018) ................................ 6

*Soverain IP, LLC v. AT&T, Inc.*,
  No. 2:17-CV-00293-RWS, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) ............... 18, 23, 26

*Soverain IP, LLC v. AT&T, Inc.*,
  No. 2:17-CV-00293-RWS-RSP, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017) .................... 26

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
  282 F. Supp. 3d 916 (E.D. Va. 2017) ..................................................... 27

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ..................................................................... 6, 7

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ........................................................................ 25

*In re Volkswagen Grp. Of Am.*,
  28 F.4th 1203 (Fed. Cir. 2022) ...................................................... 19, 22

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................ 27

*Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*,
  406 F. Supp. 3d 585 (E.D. Tex. 2019) ..................................................... 23

*Westech Aerosol Corp. v. 3M Co.*,
  927 F.3d 1378 (Fed. Cir. 2019) ............................................................ 6

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)...............................................................................................6

**Statutes**

28 U.S.C. § 1400.................................................................................................... *passim*

███████████████████████████████████

### STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)

(1)     Whether the Court should dismiss, or in the alternative transfer to the Northern District of California, this patent case under Fed. R. Civ. P. Rule 12(b)(3) and 28 U.S.C. §§ 1400(b) and 1406(a) for improper venue because Defendant Broadcom, Inc. neither resides in this District nor has a regular and established place of business in this District, as required to support venue under 28 U.S.C. § 1400.

██████████████████████████████

## I.     INTRODUCTION

As Defendant Broadcom Inc. has repeatedly explained, and as venue discovery confirmed, Broadcom Inc. ████████████████████ employees in the Eastern District of Texas ("this District").  Broadcom Inc. is not incorporated in or authorized to do business in this District and does not have any physical presence in this District.  As such, Broadcom Inc. does not (1) reside or (2) have a regular and established place of business in this District and venue is improper here. Accordingly, the claims against Broadcom Inc. should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(3) and 28 U.S.C. §§ 1400(b) and 1406(a).

In the alternative, Broadcom Inc. respectfully requests that the Court transfer this action pursuant to 28 U.S.C. § 1406(a) to a district where this case could have been brought and that is more convenient to the parties: the U.S. District Court for the Northern District of California ("the Northern District of California").

## II.    FACTUAL BACKGROUND

Plaintiff Polaris Innovations Limited ("Polaris") filed its original complaint against Broadcom Inc. on September 7, 2022, asserting that certain products infringe five of Polaris's patents.  On November 3, 2022, Polaris served its infringement contentions, identifying additional products that purportedly infringe those patents.  *See* Dkt. No. 65 at 1-2 (collectively listing the "Accused Products").[1]  On November 15, 2022, Broadcom Inc. filed a first Motion to Dismiss the Complaint pursuant to at least Rule 12(b)(3).  Dkt. No. 21 ("First Motion to Dismiss").  On February 6, 2023, the Court denied Broadcom Inc.'s First Motion to Dismiss without prejudice and ordered "tailored" venue discovery regarding whether the "Plano Office," discussed below,

---

[1] Polaris also served amended infringement contentions on November 9, 2022, and a first amended complaint on May 4, 2023 (Dkt. No. 69), but for purposes of this Motion, there are no relevant differences between the products accused in the original complaint and original infringement contentions versus the amended versions.

constitutes Broadcom Inc.'s regular and established place of business.   Dkt. No. 46 ("Sealed Order") at 4-5.   The Sealed Order also granted Broadcom Inc. leave to refile a Rule 12(b)(3) motion following the prescribed venue discovery.   *Id.* at 5.   Venue discovery was completed by April 7, 2023, and Broadcom filed its second Motion to Dismiss the Complaint under Rule 12(b)(3) on April 21, 2023.   Dkt. No. 65 ("Second Motion to Dismiss").

Rather than responding to Broadcom Inc.'s Second Motion to Dismiss, and only one day before its response was due, Polaris filed a first amended complaint.   Dkt. No. 69 ("FAC").   The first amended complaint, which adds 35 pages of venue allegations, is drafted like an opposition to Broadcom Inc.'s Second Motion to Dismiss and is simply an act of gamesmanship by Polaris to force Broadcom Inc. and this Court to expend more resources assessing whether venue is proper, and prolong the time that Broadcom Inc. is held before this Court without proper venue.

Ultimately, however, the first amended complaint fails to show that venue is proper in this District.   Even after months of full venue discovery, Polaris cannot point to a single Broadcom Inc. employee, or any business specific to Broadcom Inc., in this District.   Instead, and in a last-ditch effort to argue that venue is proper, Polaris twists the evidence by conflating the entire Broadcom family with Defendant Broadcom Inc., making false allegations about the lease, and even deceptively cropping a photo.   But none of Polaris's myriad of different venue theories prove that venue for Broadcom Inc. is proper, and Broadcom Inc. thus hereby files the present Motion to Dismiss the First Amended Complaint under Rule 12(b)(3) ("Motion").

A.   **Broadcom Inc. Does Not Reside in this District and Does Not Have an Established Place of Business in this District**

Broadcom Inc. is not incorporated in, is not registered to do business in, and does not have a place of business in this District.   Ex. 7, Declaration of Ryan D. Phillips ("Phillips Decl.") ¶¶ 2-3.   In fact, Broadcom Inc. does not have any physical presence in this District.   It does not own or



lease any real estate, possess or control any physical place, own or control any shelf space, or have any employees in this District. *Id.* ¶ 2.  Instead, Broadcom Inc. is incorporated in Delaware and maintains its principal place of business in San Jose, California. *Id.*

Polaris alleges that Broadcom Inc. has a regular and established place of business in this District at 5465 Legacy Drive, Plano, Texas 75024 ("the Plano office").  FAC ¶¶ 2, 10.  But as venue discovery confirmed, this office is not controlled or utilized by Broadcom Inc.  Broadcom Inc. does not have any employees at this office, nor does it conduct any business at this office. Phillips Decl. ¶¶ 4-5.  Instead, this office is controlled and utilized by CA, Inc. ("CA"), a separate and distinct entity from the only named defendant, Broadcom Inc.[2]  *Id.* ¶ 5.

## B.    The Plano Office is Controlled and Utilized by CA, Inc.

The Plano office is leased by CA, as the lease agreements for the Plano office name CA (f/k/a Computer Associates International, Inc.) as the Tenant ███████████████████████

██████.  *See* Ex. 16 at 1; Ex. 17 at 1.  CA began leasing the Plano office space in 2000 and has maintained its status as the lessee following the 2018 acquisition of CA by Broadcom Inc.  *See* Ex. 16 (original lease agreement, dated June 27, 2000); Ex. 17 (6th amendment to original lease agreement, dated Aug. 31, 2021); Ex. 9, Deposition of Ryan D. Phillips ("Phillips Dep.") at 26:6-20 (█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████).  ████████████

██████████████████████████████████████████████████████████,

as it is CA, not Broadcom Inc., who originally was, and who continues to be, the tenant at the

---

[2] CA similarly has no involvement in the Accused Products, whether through CA's Plano office or otherwise.  *See* Ex. 1, Declaration of Sherman Chen ("Chen Decl.") ¶ 6; Ex. 2, Declaration of Eliot Rosen ("Rosen Decl.") ¶ 10; Ex. 3, Declaration of Rex Kiang ("Kiang Decl.") ¶ 13; Ex. 4, Declaration of Mark Gonikberg ("Gonikberg Decl.") ¶ 7; Ex. 5, Declaration of Haim Lustig ("Lustig Decl.") ¶ 6; Ex. 6, Declaration of Mohan Kalkunte ("Kalkunte Decl.") ¶ 8.



Plano office.  *See, e.g.*, Exs. 18, 19, 20.  Nothing in these lease agreements mentions or implicates

Broadcom Inc.  *See* Phillips Dep. at 52:18–53:5 (

).

Similarly,                                        it does not employ anyone who works at

the Plano office.  Ex. 8, Second Declaration of Ryan D. Phillips ("Phillips Second Decl.") ¶ 3;

Phillips Dep. at 40:11-23, 92:14–93:4, 148:4–149:7 (

).  On September 7, 2022, the date of Polaris's original complaint,

. Ex. 21 at 1.

. *Id.*  None of these employees were employed by the named

defendant, Broadcom Inc.  *Id.*

**C.    The Accused Products, Relevant Documentation, and Witnesses Are Located in the Northern District of California**

Broadcom Inc. has its principal place of business in the Northern District of California.

Phillips Decl. ¶¶ 2-3, 9.

No employees of any of Broadcom Inc.'s subsidiaries who work, or previously worked, on

the Accused Products are located in this District.  Instead, any relevant U.S. employees are located

in California, Colorado, or Massachusetts.  Chen Decl. ¶¶ 1-5; Lustig Decl. ¶¶ 1-5; Gonikberg

Decl. ¶¶ 1-6; Kalkunte Decl. ¶¶ 1-7; Kiang Decl. ¶¶ 1-12; Rosen Decl. ¶¶ 1-9; Phillips Decl. ¶¶ 8-

9. Outside of the United States, they are located in the United Kingdom, Israel, India, Taiwan, and

███████████████████████████████

Canada.  Chen Decl. ¶ 3; Lustig Decl. ¶ 4; Kalkunte Decl. ¶¶ 4-5; Kiang Decl. ¶¶ 4-5, 8-9; Rosen

Decl. ¶¶ 4-7.

Additionally, none of the relevant information, data, and documents, including computer

source code and internal technical documents for the Accused Products, are located in this District.

Instead, this evidence is located in California, Colorado, and Massachusetts.  Chen Decl. ¶ 4;

Lustig Decl. ¶¶ 4-5; Gonikberg Decl. ¶ 6; Kalkunte Decl. ¶¶ 4-6; Kiang Decl. ¶¶ 10, 12; Rosen

Decl. ¶¶ 8-9; Phillips Decl. ¶¶ 8-10. ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████ as CA works on Infrastructure Software and has no relationship to any of the

Accused Products, which instead fall under the Semiconductor Solutions side of the Broadcom

family.  *See* Ex. 10, Deposition of Sherman Chen, Ph.D. ("Chen Dep.") at 24:4–25:8, 27:21–29:14,

32:5-7; Ex. 11, Deposition of Mark Gonikberg ("Gonikberg Dep.") at 33:16–34:18, 27:16-20; Ex.

12, Deposition of Rex Kiang ("Kiang Dep.") at 28:11-23; Ex. 13, Deposition of Mohan Kalkunte

("Kalkunte Dep.") at 35:2-25; Chen Decl. ¶ 6; Lustig Decl. ¶ 6; Gonikberg Decl. ¶ 7; Kalkunte

Decl. ¶ 8; Kiang Decl. ¶ 13; Rosen Decl. ¶ 10; *see also* Dkt. No. 25-10 (Broadcom Inc.'s 2021 10-

K SEC filing) at 3-8; Ex. 22 at 1 (explaining that CA was acquired to "meet the growing demand

for infrastructure software solutions"); Phillips Dep. at 44:1-19; 107:2-11.

## III.   VENUE IN THIS DISTRICT IS IMPROPER UNDER 28 U.S.C. § 1400(b)

The first amended complaint should be dismissed under Rule 12(b)(3) because venue in

this District is improper under 28 U.S.C. § 1400(b).  As explained below, Broadcom Inc. neither

resides in, nor maintains ***any*** place of business in this District.  Accordingly, this lawsuit should

be dismissed or, in the alternative, transferred to the proper venue of the Northern District of

California.

███████████████████████████████

### A.     Legal Standard

As the plaintiff, Polaris "bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).  Venue in patent infringement cases is governed by 28 U.S.C. § 1400(b), which permits such cases "in the judicial district [1] where the defendant resides, or [2] where the defendant [a] committed acts of infringement[3] and [b] maintains a regular and established place of business."  "Section 1400(b) . . . is intended to be restrictive of venue in patent cases compared with the broad general venue provision" and should be "strictly construed." *In re ZTE (USA) Inc.*, 890 F.3d at 1014; *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603-GPC(BGS), 2018 WL 310184, at *1 (S.D. Cal. Jan. 5, 2018).

For the Rule 12(b)(3) analysis, the Court "may look beyond the complaint" and consider "affidavits and evidence submitted by [Broadcom Inc.]" in support of this Motion. *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017) (Gilstrap, J.).  Where Broadcom Inc.'s "affidavits or evidence controvert[] specific facts alleged in [Polaris's first amended complaint], [the Court] is no longer required to accept those controverted facts as true." *Id.*  The Court is also not bound to accept as true Polaris's conclusory allegations or legal conclusions masquerading as factual conclusions. *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019).

### B.     Broadcom Inc. Does Not Reside in This District

A "domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).  Broadcom Inc. is incorporated in Delaware, not Texas.  Phillips Decl. ¶ 2; FAC ¶ 2.

---

[3] Because the evidence and case law are clear that Broadcom Inc. does not maintain a regular and established place of business in this District, Broadcom Inc. does not raise or dispute in the present Motion this other element of infringement liability but reserves the right to do so later in this case.

Because Broadcom Inc. is not incorporated in Texas, it does not "reside" in this District for purposes of patent venue under 28 U.S.C. § 1400(b).  *See TC Heartland*, 137 S. Ct. at 1517; *In re BigCommerce, Inc.*, 890 F.3d 978, 980 (Fed. Cir. 2018).

### C.   Broadcom Inc. Does Not Maintain a Regular and Established Place of Business in This District

There are three requirements to show a regular and established place of business in a judicial district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray, Inc.*, 871 F.3d 1355, 1360-64 (Fed. Cir. 2017).

For the first *Cray* factor, the "place" must be a "physical, geographical location in the district from which the business of the defendant is carried out."  *Id.* at 1362.  Under the second *Cray* factor, "a 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  *In re Google LLC*, 949 F.3d 1338, 1344-45 (Fed. Cir. 2020).   Finally, the third *Cray* factor requires that the physical location is "a place of *the defendant*."  *In re Cray*, 871 F.3d at 1363 (emphasis in original).  For this third factor, relevant considerations to this analysis may include (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," (2) "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place," and (3) "marketing," "advertisements," or representations that "indicate that the defendant itself holds out a place [in the district] for its business."  *Id.* at 1363-64.  Notably, "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location."  *Id.* at 1364.

███████████████████████████

Broadcom Inc. does not satisfy this *Cray* test because Broadcom Inc. does not maintain any physical location in the District, much less a regular and established place of business.  Indeed, Broadcom Inc. does not own or lease any real estate, possess or control any physical place, own or control any shelf space, or have any employees in this District.  Phillips Decl. ¶ 2.  Broadcom Inc. is not even registered to do business in Texas.  *Id.* ¶ 3.

The only "physical place" at issue for venue in this District is the CA Plano office.  *See* FAC ¶¶ 2, 10-85 (relying entirely upon the Plano office to allege venue); Dkt. No. 46 at 3 ("The crux of the pending dispute is whether the Plano Office is Broadcom [Inc.]'s regular and established place of business, i.e.: the place of Broadcom [Inc.]").  While Broadcom Inc. does not dispute that the Plano office is located in this district, as discussed above and further explained below, the Plano office is not a regular and established place of business of Broadcom Inc.  Rather, the Plano office is the place of business of CA, which is a separate and distinct corporate entity from Broadcom Inc.  Thus, CA's Plano office cannot be imputed to, or otherwise considered as, Broadcom Inc. for venue purposes.

1.     **The Plano Office Is Not a Regular and Established Place of Business of Broadcom Inc.**

The Plano office is not a regular and established place of business of Broadcom Inc., it is the place of business of CA.  The Plano office is leased, possessed, controlled, and operated by CA, not Broadcom Inc.  Phillips Decl. ¶¶ 4-5.  In fact, CA has represented to this Court, in other cases filed after the acquisition of CA by Broadcom Inc., that the Plano office is CA's place of business.  *See, e.g.*, *CA, Inc. et al. v. Netflix, Inc.*, Case No. 2:21-cv-00080, Dkt. No. 1 (Complaint) at 1 (E.D. Tex. Mar. 9, 2021); *Implicit, LLC v. CA, Inc.*, Case No. 2:19-cv-00038, Dkt. No. 18 (CA, Inc.'s Answer and Counterclaims to Plaintiff's First Amended Complaint for Patent Infringement) at 1 (E.D. Tex. May 5, 2019).

████████████████████████████████████████

Polaris attempts to twist the evidence to argue that the Plano office is a regular and established place of business of Broadcom Inc.  It does so by, for example, conflating the entire Broadcom family with Broadcom Inc., mischaracterizing documents and testimony, asserting allegations that are clearly contradicted by the evidence, and citing evidence that is unrelated and irrelevant to the allegation for which it is cited.[4]  But, as discussed in more detail below, the evidence, when viewed in the proper light, controverts Polaris's allegations and establishes that venue is not proper in this District.

### a.    Broadcom Inc. Has No Employees at the Plano Office

Broadcom Inc. has no ████████████████ employees in this District.  *See* Phillips Decl. ¶¶ 2, 4-5; Phillips Second Decl. ¶ 3; Ex. 26 ██████████████████████████ ████████████████████████████████); Exs. 27, 21, 28 (showing no Broadcom Inc. employees in Plano office); Exs. 29, 30 (showing no Broadcom Inc. employees in Plano office or in an Austin, Texas office or remote Texas location); Phillips Dep. at 40:11-23, 92:14–93:4, 148:4–149:7 (████████████████████████████).  Instead, the individuals employed in Plano are employed by subsidiaries of Broadcom, Inc.  *See, e.g.*, Ex. 23 at BCM0038486 (██████████████████████████████████████ ██████████████████████████████████); Ex. 31 at 1 (██████████ ████████████████████████████████████████████████ ██████████████████).  Not only does Broadcom Inc. not employ individuals in the Plano office, but none of the employees in Plano are paid by Broadcom Inc., nor do they receive any benefits from Broadcom Inc.  *See, e.g.*, Phillips Dep. at 22:1-5 (██████████████████

---

[4] As just one example, Polaris cites "BCM0041417" in eight separate allegations (FAC ¶¶ 13, 20, 25-26, 39, 50, 63-64), but this Bates # refers to the Table of Contents of a technical document and is completely irrelevant.  *See* Ex. 38 at BCM0041417.

████████████████████████████████████████

████████████████████); Chen Dep. at 11:22-25 (same); Gonikberg Dep. at 5:19-21, 8:3-7 (same); Kalkunte Dep. at 62:19-24 (same); Kiang Dep. at 12:16-21 (same); Ex. 14, Deposition of Eliot Rosen ("Rosen Dep.") at 5:16-19, 7:22-25 (same); Exs. 32, 33 (showing that employee benefits are not provided by Broadcom Inc.).  Simply stated, there are no Broadcom Inc. employees conducting Broadcom Inc. business at the Plano office.

Polaris's allegations asserting otherwise are directly contrary to the record evidence.  For example, Polaris points to policies and agreements, including agreements for two particular Plano employees, ████████████████████.  FAC ¶¶ 12, 16, 18.  But, as the agreements themselves establish, those two individuals are not employed by Broadcom Inc. and are instead employed by ███ (Ex. 39) and █████████████████ (Ex. 40), respectively.  *See also* Ex. 21 at 4, 7 (confirming that those two individuals are not employed by Broadcom Inc.); Ex. 31 at 1 (████████████████████████████████████████████████████████████████████████████████████████████████).  Polaris further alleges that ████████████████████████████████████████████████████ FAC ¶¶ 17, 37, 82. ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████  *See, e.g.*, Phillips Dep. at 86:16–87:2, 148:4–149:7 (████████████████████████████████████████████████), 87:14–88:7 (████████████████████████████████████).  Polaris further relies on the Employee Stock Purchase Plan (FAC ¶ 15), ████████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████ Phillips Dep.

at 132:5-20.

Polaris also continues to rely on LinkedIn evidence of alleged employees and job postings

of "Broadcom Inc." (FAC ¶¶ 13, 19, 31, 36, 49, 69), but as Broadcom Inc. has already previously

established, such LinkedIn evidence is flawed and unreliable.  *See* Prior Reply at 4-5 (explaining

how CA's LinkedIn account redirects to the "Broadcom Inc." LinkedIn account and how the

exemplary LinkedIn employee profiles identified by Polaris are actually for CA employees).

Indeed, Mr. Gonikberg's deposition established just how unreliable LinkedIn evidence is, as he

testified that ███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████ Gonikberg Dep. at 28:11–

29:20.  Moreover, such employment evidence from LinkedIn "fails to rebut" declaration testimony

to the contrary, as provided here by Broadcom Inc.  *Nat'l Steel Car Ltd. v. Greenbrier Companies,

Inc.*, No. 6:19-CV-00721-ADA, 2020 WL 4289388, at *4 (W.D. Tex. July 27, 2020); *see* Phillips

Decl. ¶¶ 2, 4-5; Phillips Second Decl. ¶ 3.

Polaris's allegation regarding job postings (FAC ¶ 19) also attempts to rely on the

Broadcom U.S. Employee Handbook (Ex. 41) and the Broadcom website (Dkt. No. 25-8), but as

explained below in Section III.C.1.c, these are associated with the entire Broadcom family, not

Broadcom Inc. in particular.  And Polaris also references "job description guidelines" (FAC ¶ 19),

but it cites Ex. 42, which is merely a photograph and does not show any such guidelines.

**b.      Broadcom Inc. Does Not Lease or Control Access to the Plano
Office**

Further, it is CA, and not Broadcom Inc., that is the signatory on the lease of the Plano

Office. ██████████████████████████████ *See* Exs. 16, 17 (identifying CA as

██████████████████████████████████████████

the Tenant ██████████████████████████ for the Plano office, including both before and

after Broadcom Inc. acquired CA in 2018); *see, e.g.*, Exs. 18, 19, 20 (████████████████████

█████████████); *see also* Phillips Dep. at 26:6-20, 52:18–53:5 (██████████████████████

███████████████████████).  Thus, similar to *Board of Regents v. Medtronic PLC*, where

a subsidiary's place of business was not a regular and established place of business of the parent

because it was the subsidiary who leased the location, CA's Plano office is likewise not a regular

and established place of business of Broadcom Inc.  No. A-17-CV-0942-LY, 2018 WL 4179080,

at *2 (W.D. Tex. July 19, 2018) (finding that parent Medtronic did not have a place of business in

the district where it was undisputed that "the San Antonio building [was] leased by . . . a wholly-

owned subsidiary of Medtronic" and "the San Antonio building [was] a regular and established

place of business for [two subsidiaries]"); *In re Cray*, 871 F.3d at 1364-65 (finding that a location

was not a place of business of Cray where Cray did not "own[], lease[], or rent[] any portion of

[the location]"); *see also Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1290

(Fed. Cir. 2021) (finding that Non-Store defendants, including corporate parent, did not ratify

subsidiary Stores' retail locations as their own where "[t]he Non-Store defendants do not own or

lease Stores locations; Stores leases and performs all operations at the retail locations").

Polaris ignores these facts, and the law, and continues to allege that Broadcom Inc. ████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████. FAC ¶¶ 63-66.  But this is not true,

and is contradicted by the clear evidence cited above that the Plano office is leased and controlled

by CA, including both before and after its acquisition.

Polaris cites to nothing to support its allegations that Broadcom Inc. ████████████

█████████████████████ (FAC ¶ 63), ████████████████████████████████████

██████████████ (*see* Ex. 16 at 93-94), or that Broadcom Inc. ████████████████ ██ (FAC ¶ 65).  In fact, █████████████████████████ ███████████████████████████████████████ ████████████████ Phillips Dep. at 52:18–53:5, 26:6-20.

Also, Polaris does not and cannot show that Broadcom Inc. conditions its parent-subsidiary relationship with CA or somehow the subsidiaries' employment of the Plano employees upon their continued residence in this District.

Polaris next alleges that Broadcom Inc. controls access to the Plano office via connect@BRCM, security badges, and return-to-work policies.  FAC ¶¶ 68-69.  But as explained below in Section III.C.1.c, these policies are by and for the entire Broadcom family and are not associated with Broadcom Inc. in particular.  Regardless, access to the Plano office is ultimately based on employment, and as explained above in Section III.C.1.a, this employment is by Broadcom subsidiaries, not Broadcom Inc.

### c.    Allegations Regarding "Broadcom" in General Are Irrelevant

As Broadcom Inc. does not have employees in the Plano office and does not lease or control the Plano office, Polaris resorts to conflating the generic term "Broadcom," and aspects of the entire corporate family it refers to, with Broadcom Inc.  For example, the first amended complaint includes allegations regarding: the "Broadcom" name, logo, and trademark; "Broadcom" corporate policies; resources or aspects of the entire "Broadcom" family, such as the @broadcom.com email domain, Broadcom telephone employee directory, Broadcom website, Broadcom divisions, and ████████████████████████ ; and other generic references to the "Broadcom" family or common aspects thereof.  *See, e.g.*, FAC ¶¶ 11-22, 24-57, 59-63, 68-69, 72-76, 78-79, 81-82.

First, the term "Broadcom" does not refer to Broadcom Inc.  Instead, "Broadcom" is a generic name, logo, and trademark used by and for the entire corporate family, including

13

██████████████████████████████████████

"Broadcom Inc. **and/or its subsidiaries**," as made clear by, among many other things, the corporate family website.  *See, e.g.*, Prior Reply, Ex. 10 (Dkt. 30-4) at 5; Prior Reply, Ex. 11 (Dkt. 30-5) at 4; Ex. 23 at BCM0038486 (████████████████████████████████); Ex. 24 at 4 (referencing, in a Broadcom policy, "Broadcom Inc. and each of its subsidiaries" as "collectively, . . . 'Broadcom'"); Ex. 25 at 1 (same); Gonikberg Dep. at 16:25–17:13.  Indeed, use of the term "Broadcom" in relation to the Plano office is based on the Plano office being used and controlled by a subsidiary member of the corporate family (i.e., CA), not Broadcom Inc.  Thus, use of the term "Broadcom" in relation to the Plano office does not establish that office as a place of Broadcom Inc.  *See Bd. of Regents*, 2018 WL 4179080, at *2 (finding no dispute that a building was the regular and established place of business for Medtronic's subsidiaries and not parent Medtronic, Inc. despite use of the generic name "Medtronic" in relation to the building); *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1125-26 (Fed. Cir. 2021) (refusing to impute a subsidiary's office to its parent based on "shared marketing, branding, and trade names," and not even considering whether such evidence made it the parent's place to begin with); *see also Andra Grp.*, 6 F.4th at 1288, 1290 (holding that "companies' shared use of 'Victoria's Secret' in their name does not detract from the separateness of their businesses," and also finding no "control" by parent LBI where public filings "cover[ed] all of LBI's brands" and "[t]he documents' use of 'we' d[id] not . . . mean[] LBI specifically, but . . . could include the individual subsidiary brands").

Similarly, just as the generic term "Broadcom" does not establish the Plano office as Broadcom Inc.'s place of business, neither do aspects associated generally with the Broadcom family as a whole.  For example, Polaris attempts to mischaracterize the Broadcom family's "divisions" and ███████████████ and the business of these institutions (i.e., products and services), as being associated with Broadcom Inc.  FAC ¶¶ 22, 24-26, 35, 38-50, 53, 63, 72,



74-75, 78-79, 81.  However, as explained by Mr. Phillips, Broadcom Inc.'s corporate witness for venue discovery, █████████████████████████████████████████████████

█████████████  For example, Mr. Phillips explained that █████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████  Phillips Dep. at 117:25–118:15, *see also*

87:18–88:7, 112:2-7.  Mr. Phillips went on to state that ████████████████████████

█████████████████████████████████████  *Id*. at 40:5-23; *see also*

64:11-21; 121:3-20; 143:3-14, 150:11–151:3.  Moreover, ████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████  Ex. 26 (████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████);  Ex. 21 (same).

    The same is also true for the various corporate policies and agreements to which Polaris points, including return-to-work policies (e.g., connect@BRCM), HR type policies (e.g., Ex. 24 ("Ethics Code"), also at Dkt. No. 25-14, and Exs. 25, 41), and employment-related agreements (e.g., Exs. 31, 39).  FAC ¶¶ 12, 15-21, 27-29, 34, 37, 44-49, 51, 57, 61, 68-69, 82.  These corporate policies and agreements are not specifically attributable to Broadcom Inc. but are instead associated with and applicable to the entire Broadcom family.  ██████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████  Phillips Dep. at 80:10-16, 88:15–89:9, 89:21-25, 159:8–160:20 (regarding employment-related agreements in, or referenced by, Exs. 39, 40, including Ex. 31); 92:14–93:4, 95:1-10, 96:19-23, 98:9–99:4, 132:13-20, 133:11–134:1, 135:6–136:11

15

███████████████████████████████████████████████████████

(regarding Exs. 43, 44, 45, 46, i.e., return-to-work and COVID-19 policies, including for connect@BRCM); 143:3-14, 144:7-10, 148:4–149:7, 155:25–156:7, 156:17-20, 157:3-6 (regarding Exs. 24 and 25, i.e., the Ethics Code and related Open Door Policy).  In fact, ██████

████████████████████████████████████████████████████████████

Ex. 47.  As for the ███████████████████████████████████ to which Polaris cites (FAC ¶¶ 12, 18, 37, 44), it makes clear that ███████████████████████████████

██████████████████████████ Ex. 39 at BCM0038491 (emphasis added).  Also, while Polaris relies heavily on the Broadcom U.S. Employee Handbook (Ex. 41), Polaris has no support for its allegations that ████████████████████████ (FAC ¶¶ 17-21, 27, 51, 57, 74), ███████████████████████████ And ultimately, the applicability of the Handbook is premised on employment by a Broadcom entity, which Broadcom Inc. does not control, as explained above in Section III.C.1.a.

Likewise, while Polaris relies on evidence such as the Broadcom website listing the Plano office address and job postings, Plano employees having the @broadcom.com email domain, and Plano employees being included in the Broadcom telephone employee directory (FAC ¶¶ 13-14, 19, 30-31, 34, 36, 54-55, 59, 61-62, 69, 76), such evidence fails to establish that the Plano office is a regular and established place of business for Broadcom Inc. because these things (i.e., website, email domain, and employee directory) are by and for the entire Broadcom family, including CA. They are not specific to Broadcom Inc.  *See* Prior Reply at 2-4; Phillips Decl. ¶ 6; Phillips Dep. at 121:3–123:17, 129:9-13; Dkt. No. 25-15; Prior Reply, Ex. 10 (Dkt. No. 30-4) at 5.

Polaris is certainly aware of the distinction between Broadcom Inc. and the Broadcom family as a whole, including because Broadcom Inc. addressed this issue in its Second Motion Dismiss.  Dkt. No. 65 at 10-11.  Yet, Polaris continues to bury its head in the sand and

████████████████████████████

mischaracterize the evidence by improperly conflating the Broadcom family and Broadcom name

with Broadcom Inc.  *See generally* FAC ¶¶ 10-85.  This is because Polaris knows that under proper

inspection, the evidence shows that the Plano office is not Broadcom Inc.'s regular and established

place of business.  Indeed, Polaris cannot change the fact that the Plano office is not leased,

possessed, controlled by Broadcom Inc. and that Broadcom Inc. does not have any employees or

actually engage in business at the Plano office.

### d. Polaris's Inspection Failed to Uncover Evidence Establishing the Plano Office as Broadcom Inc.'s Regular and Established Place of Business

Despite taking over 75 photographs during its inspection of the Plano office, Polaris's

inspection failed to uncover any reliable evidence that the Plano office is a regular and established

place of business of Broadcom Inc.  None of these photographs establishes that Broadcom Inc.

leases, possesses, or controls the Plano office.  Polaris did not photograph a single Broadcom Inc.

employee or any evidence of Broadcom Inc. business being carried out at the Plano office.  This

is unsurprising because, as explained above, no such employees exist and no such business occurs

in the Plano office.  Polaris did take numerous photographs of the term "Broadcom" as used in

relation to the Plano office, even going so far as to photograph a mere napkin that says "Broadcom"

(Ex. 34), but as explained above, the term "Broadcom" is a generic term used by the Broadcom

family as a whole and is not specific, or equivalent, to Broadcom Inc.

While Polaris did photograph two instances in which the name "Broadcom Inc." appears

at the Plano office—(i) a photograph of a Boiler Certificate for the Plano office (Ex. 35, "Boiler

Certificate") and (ii) a letter ████████████████████ addressed to Lauren Verhagen at

the Plano office address (Ex. 36, "████ Letter")—these do not establish, as Polaris alleges, that

Broadcom Inc. is actually conducting business in the Plano office (FAC ¶ 25) or that Broadcom

Inc. has represented the Plano office as its place of business (FAC ¶¶ 61, 70).  These two isolated

█████████████████████████████████████

documents were prepared by third parties (not Broadcom Inc.), are not representations by Broadcom Inc., and do not show that Broadcom Inc. has any employee or agent in the Plano office, much less conducts regular business there.   Indeed, the Boiler Certificate more specifically identifies the Accounts Payable Department of Computer Associates (i.e., CA), the true lessee and operator of the Plano office, as the relevant addressee.   Notably, Polaris *crops* the photograph of the Boiler Certificate to conceal this critical fact after it was explained in Broadcom Inc.'s prior Second Motion to Dismiss (*compare* Ex. 35 *with* FAC ¶ 25), which is just another example of how Polaris mischaracterizes the evidence in its venue allegations.   And as for the ████ Letter, it is addressed to Lauren Verhagen, who is not an employee of Broadcom Inc. but instead is an employee of CBRE, ███████████████████████████████████████

████.   *See* Ex. 21 at 11-12 (████████████████████████████████

████); Ex. 37 (showing a written statement by Lauren Verhagen that she works "at CBRE" and referencing the "team on the Broadcom account").   Polaris does not and cannot identify any relevant regular business of Broadcom Inc. purportedly shown by these two isolated instances.

Accordingly, all of the evidence produced before and during venue discovery establishes that the Plano office is not the regular and established place of business of Broadcom Inc.

**2.      No Agents Conduct Business of Broadcom Inc. at the Plano Office**

Further, Polaris fails to establish the second *Cray* factor based on an agency relationship between Broadcom Inc. and any entity or employee at the Plano office.[5]   The second *Cray* factor requires "an employee or *agent*" of Broadcom Inc. to be conducting the Broadcom Inc.'s business

---

[5] Agency arguments relate only to the second *Cray* factor, not the entire *Cray* test, and thus agency alone cannot establish venue by imputing the Plano office to Broadcom Inc.   *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS, 2017 WL 6452802, at *1 (E.D. Tex. Dec. 18, 2017); *see also In re Google LLC*, 949 F.3d 1338, 1344-45 (Fed. Cir. 2020) (analyzing agency argument for the second *Cray* factor); *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1290 (Fed. Cir. 2021) (same).

████████████████████████████████

at the Plano office.  *In re Google*, 949 F.3d at 1344-45 (emphasis added).  To establish agency, Polaris must prove: "(1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act."  *In re Google*, 949 F.3d at 1345 (cleaned up).  The control required is "interim control," in which the principal can give interim or step-by-step instructions and then control how those instructions are executed.  *In re Volkswagen Grp. Of Am.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022).  Further, to establish the second *Cray* factor based on an agency relationship, the agent must be "conducting the [principal's] business."  *In re Google*, 949 F.3d at 1345.

The identification and scope of this "business" is important.  For example, even where Google had control over ISPs with respect to certain activities, the ISPs "were not Google's agents for venue purposes for these activities" because the activities could not be considered the conduct of Google's business.  *In re Volkswagen*, 28 F.4th at 1209 (citing *In re Google*, 949 F.3d at 1346). The analysis thus requires a "proper characterization of the [alleged principal's] business in [this] District," if any, including because "agency relationships are narrow in scope" and "just because a party may be a principal's agent for a particular purpose does not mean that the party is the principal's agent for another."  *In re Volkswagen*, 28 F.4th at 1209-10.  Importantly, "business" for purposes of the venue statute means "the defendant's conduct of business in the sense of production, storage, transport, and exchange of goods or services."  *In re Google*, 949 F.3d at 1347.

Here, Polaris's agency theories fail to show the second *Cray* factor because no such "business" of Broadcom Inc. is being conducted in the Plano office.  Indeed, Broadcom Inc. is not registered, and has no authority, to do business in Texas.  *See* Phillips Decl. ¶ 3.  Broadcom Inc. is

███████████████████████████████████████ (*see* Section III.C.1.a) and ████████████

██████████████████████████████████████. Tellingly, Polaris did not try to gain

19

████████████████████████████████████

any discovery on this point during venue discovery.  Instead, to allege "business," Polaris attempts to attribute the products and services of the entire Broadcom family's "divisions" and ████████ ████████ to Broadcom Inc. (FAC ¶¶ 24-26, 39-41, 50, 53), but as explained above in Section III.C.1.c, these are divisions and ████ of the Broadcom family as a whole, not Broadcom Inc.  Simply stated, Polaris does not and cannot identify any "business" of ***Broadcom Inc.*** that an alleged agent purportedly conducts at the Plano office.  *See In re Google*, 949 F.3d at 1345 (holding that an agent must be "conducting the defendant's business at the alleged 'place of business'").

Furthermore, Polaris's allegations fail to show any relevant agency relationship to begin with.  Polaris alleges control and consent largely based on the generic term "Broadcom" (¶¶ 31-32, 52-53, 56); corporate policies (¶¶ 27-29, 34, 37, 44-49, 51, 57) including the Ethics Code (¶¶ 27, 29, 37, 44, 46) and return-to-work policies such as connect@BRCM (FAC ¶¶ 28, 34, 57); the @broadcom.com email domain (¶¶ 30-31, 36); divisions (¶¶ 38, 53); and the Broadcom website and employee directory (¶¶ 54-55, 59).  However, as explained above in in Section III.C.1.c, this evidence relates to the entire Broadcom family, not Broadcom Inc. in particular.  Certainly, Broadcom Inc. would not consent to each and every employee of the entire Broadcom family acting on its behalf.  Also, the Federal Circuit has found that such evidence does not establish the "control" element.  *See Andra Grp.*, 6 F.4th at 1288 (holding that "[n]one of the public filings cited by [Plaintiff] demonstrate [the parent]'s control, because they are documents covering all of [the parent]'s brands" and they use terminology that does not "mean [the parent] specifically, but . . . could include the individual subsidiary brands").

Polaris points in particular to the Ethics Code for control, alleging that Broadcom Inc. ████ and enforces this Ethics Code, including reprimands and termination.  *E.g.*, FAC ¶¶ 29, 46. ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████   Phillips Dep. at 143:3-14, 148:4–149:7.  This case is similar to

*Andra Group* in that regard because although Polaris "contends that [Broadcom Inc.] controls the

. . . firing of employees, and argues that . . . [Broadcom Inc.] requires [subsidiary employees] to

sign and follow [Broadcom Inc.]'s Code of Conduct," ██████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████  6 F.4th at 1288-89 (finding

no control and thus no agency); *see* Phillips Dep. at 148:4–149:7.

The other evidence that Polaris points to also fails to establish agency.  It alleges total

ownership of subsidiaries (FAC ¶ 51), but this is insufficient for agency.  *See Andra Grp.*, 6 F.4th

at 1285-86, 1289.  Polaris alleges control and consent based on an End User Software Foundation

Agreement (Dkt. No. 25-18, "EUSFA") that, according to Polaris, gives Broadcom Inc. control to

suspend CA's service to a customer.  FAC ¶¶ 51, 58.  But this is not true, as Broadcom Inc. is not

even a party to that agreement (*see* EUSFA § 1.1), and under the specific provision cited by Polaris

(§ 5.6), it is CA who has the right to suspend its service.  Polaris also alleges that consent is

somehow shown by subsidiary employees (including those in ████████████████████) being

purportedly identified as employees of Broadcom Inc. (FAC ¶¶ 33, 36, 49), but this fails because

(i) the allegations refer to non-Plano employees[6] or (ii) if they refer to Plano employees, the

allegations rely on twisted, unreliable evidence—i.e., LinkedIn evidence (addressed in Section

III.C.1.a) and evidence relating to the "Broadcom" family generally (addressed in Section

III.C.1.c).  Regardless, such allegations fail to connect those alleged instances of consent to any

---

[6] Certain allegations regarding non-Plano employees refer to "general consent" (FAC ¶ 33), but
surely Broadcom Inc. does not consent to agency with any and all employees of the entire
Broadcom family.

████████████████████████████

relevant regular business of Broadcom Inc.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████   Polaris also alleges that certain policies can only be modified by Broadcom Inc. (FAC ¶¶ 45, 47), but this again mischaracterizes the evidence.  Mr. Phillips' testimony actually says that

████████████████████████████████████████

████████████████████████████████████████

████████████████████████   *See* Phillips Dep. at 160:21–161:5, 142:16–143:14, 144:11-19. Polaris's allegation also refers to ████████████████████   addressed in Section III.C.1.a.

At base, Polaris fails to show that Broadcom Inc. has interim control, with mutual consent, over an alleged agent at the Plano office, specifically in connection to the alleged agent conducting purported business of Broadcom Inc. at the Plano office.  *In re Volkswagen*, 28 F.4th at 1209-10.

Polaris's allegations of apparent agency fare no better.  For this, Polaris yet again ignores the distinction between Broadcom Inc. and the entire Broadcom family by relying on the generic name "Broadcom," job postings on the Broadcom website, and Broadcom corporate policies and employee directory (FAC ¶¶ 60-61), as addressed in Section III.C.1.c.  If anything, this evidence represents that the Plano office is part of the Broadcom family, which includes several distinct entities, including CA.  Polaris also points again to the Boiler Certificate and ████ Letter (FAC ¶ 61), which, as already addressed in Section III.C.1.d, are representations by third parties, not Broadcom Inc.  Polaris has no evidence of representations by Broadcom Inc. that would lead others to believe that the Plano office is associated with Broadcom Inc. specifically.

Therefore, there is no relevant agency relationship with respect to the Plano office for

venue purposes, and the second *Cray* factor is thus not met based on agency.

### 3.   CA's Plano Office Cannot Be Imputed to Broadcom Inc.

CA's Plano office cannot be imputed to Broadcom Inc. for purposes of venue.  "[A] subsidiary's presence in a venue cannot be imputed to a parent unless the corporations disregard their separateness and act as a single enterprise." *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS, 2017 WL 6452802, at *1 (E.D. Tex. Dec. 18, 2017); *see Andra Grp.*, 6 F.4th at 1289. For this, Polaris "has a heavy burden" and "must rebut the presumption of institutional independence" between CA and Broadcom Inc. "with clear evidence," not simply a prima facie showing.  *Nat'l Steel Car Ltd. v. Greenbrier Companies, Inc.*, No. 6:19-CV-00721-ADA, 2020 WL 4289388, at *2-3 (W.D. Tex. July 27, 2020) (internal quotation marks and citations omitted).

As this Court has recognized, establishing such a lack of formal corporate separateness "is a difficult standard to meet" and "would not be met even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose." *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (C.J. Bryson sitting by designation) (internal quotation marks and citation omitted); *see also Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019) (noting that "the typical corporate relationship between a parent and subsidiary" is insufficient, and requiring that the line between them be "so blurred that the two become one" (internal quotation marks and citations omitted)).  Similarly, the Federal Circuit has recognized that this burden is not met "even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent." *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1126 (Fed. Cir. 2021) (internal quotation marks and citation omitted).

As in the cases cited above, the evidence here is insufficient for Polaris to meet its heavy

████████████████████████████████

burden.  Polaris attempts to address the relevant Fifth Circuit factors but cannot even formulate

allegations for three of the factors (#s 6, 8, 9).  *See* FAC ¶¶ 85; *Nat'l Steel Car*, 2020 WL 4289388,

at *2-3 (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006))

(listing the factors).  Also, Polaris's allegation for factor #12 (FAC ¶ 71) cites zero evidence, and

its allegation for factor #10 (FAC ¶ 85) is wholly unsupported by the cited deposition testimony.

For factor #s 1, 3, and 4, Polaris points to whole ownership of subsidiaries and overlapping officers

(FAC ¶¶ 75, 77, 80), ███████████████████ (FAC ¶ 81), and purported common accounting

and consolidated financial statements (FAC ¶¶ 79, 84), but even if true, these things are merely

"consistent with [a] parent's and subsidiary's relationship" and should thus "not give rise to a

finding of an alter ego."  *Nat'l Steel Car*, 2020 WL 4289388, at *2, *5 (finding whole ownership,

shared officers, shared departments such as IT and legal, and joint bank accounts and tax returns

were "normal activities" for a parent-subsidiary relationship); *see also Celgene*, 17 F.4th at 1126

(similar, and noting that there was no evidence showing "dominion" of the subsidiary's finances,

policy, or business practices).  Also, to the extent that Polaris relies on ████████████████████

to show lack of separation, under any factors (*see* FAC ¶¶ 72, 74-75, 78-79, 81), these arguments

fail because, as explained in Section III.C.1.c, these █████ are not provided by Broadcom Inc.

   For  factor  #s  5  and  7,  Polaris  alleges  that ███████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████ FAC ¶¶ 72, 78 (citing Phillips Dep. at 153:10-

154:15).  But there is no evidence that CA or any other Plano entity ██████████████████████

███████████████ or operates with "grossly inadequate capital," and to note, the allegation

regarding ███████████████████ (FAC ¶ 72) does not even rise to the level of "gross"

undercapitalization for factor #7.  Rather, the cited testimony of Mr. Phillips explains that ██████

██████████████████████████████

████████████████████████████████████████

████████████████████████ Phillips Dep. at 153:10-154:15.

For factor #11, Polaris points to ████████████████ (FAC ¶ 74), but as explained in Section III.C.1.c, these ██████ are not provided by Broadcom Inc.  Polaris also alleges that Broadcom Inc. officers "can" act on behalf of Plano entities (citing a non-existent page of deposition testimony), alleges that Plano employees "switch" affiliations between different subsidiary entities, and points to representations by non-Plano employees.  FAC ¶ 73.  But Polaris does not and cannot point to any evidence showing that Broadcom Inc. is actually involved in daily operations at the Plano office, including at least because ████████████████.

Beyond the factors, Polaris includes allegations regarding the shared generic family name "Broadcom" in relation to the Plano office (FAC ¶ 76), but this fails to establish a lack of corporate separateness and is thus insufficient to impute a subsidiary's place of business to Broadcom Inc. *Bd. of Regents v. Medtronic PLC*, No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (refusing to impute Medtronic subsidiaries' building to parent Medtronic, Inc. despite  "use of the common or generic name Medtronic" for the building); *Celgene*, 17 F.4th at 1125-26 (refusing to impute a subsidiary's office to its parent despite "shared marketing, branding, and trade names"); *Andra Grp.*, 6 F.4th at 1290 ("[T]he companies' shared use of 'Victoria's Secret' . . . does not detract from the separateness of their businesses.").

Similarly, Polaris relies on three corporate policies: an unidentified return-to-work policy (for which Polaris cites Dkt. No. 38-4, which is completely unrelated to any such policy), the Ethics Code addressed above in Sections III.C.1.c and III.C.2, and the ████████████ ██████ addressed above in Section III.C.1.a.  But these policies are standard business practice and fail to establish a lack of corporate separateness.  *See United States v. Bestfoods*, 524 U.S. 51,

███████████████████████████████████████████████

71-72 (1998) (recognizing that "articulation of general policies and procedures" is an activity that "involve[s] the [subsidiary's] facility but which [is] consistent with the parent's investor status"); *see, e.g.*, Phillips Dep. at 144:7-10.  Also, in fact, ████████████████████████████████

████████████████████████████████████████████████

████  *See* Phillips Dep. at 148:4–149:7, 87:14–88:7.

In the end, Polaris has failed to present clear evidence to rebut the presumption of corporate separateness between CA, or any other subsidiary at the Plano office, and Broadcom Inc.  Indeed, Polaris cannot meet this burden because CA and Broadcom Inc. are two separate and distinct corporate entities that maintain their own independent corporate status, identity, and operation. Phillips Decl. ¶ 5.  The separateness of Broadcom Inc. and CA is demonstrated by *K.Mizra LLC v. CA, Inc.*, Case No. 2:21-cv-00247 (E.D. Tex.) because in that case, Broadcom Inc. was the original defendant (Dkt. No. 1), but upon a joint motion to substitute parties (Dkt. No. 29), the Court dismissed Broadcom Inc. and substituted CA, Inc. as the proper defendant (Dkt. No. 30).

Because CA and Broadcom Inc. have maintained corporate separateness, CA's Plano office cannot be imputed Broadcom Inc. for purposes of venue.

## IV.    THIS CASE SHOULD BE DISMISSED OR, ALTERNATIVELY, TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Because venue in this District is improper, 28 U.S.C. § 1406(a) authorizes this Court to dismiss this action or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Broadcom Inc. respectfully requests that the Court dismiss this action.  *See Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS-RSP, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) (recommending dismissal as to defendant who "does not have a place of business or any presence in the Eastern District of Texas"), *report and recommendation adopted*, 2017 WL 6452802, at *2 (E.D. Tex. Dec. 18, 2017);

26

*BillingNetwork Patent, Inc. v. Modernizing Med.*, No. 17 C 5636, 2017 WL 5146008, at *4 (N.D. Ill. Nov. 6, 2017) (dismissing lawsuit without prejudice for improper venue); *Niazi v. St. Jude Med. S.C., Inc.*, No. 17-cv-183-jdp, 2017 WL 5159784, at *5 (W.D. Wisc. Nov. 7, 2017) (same). Dismissal is especially warranted here because any amendment to attempt to cure the venue deficiency with respect to this District would be futile.

In the alternative, the Court should transfer this case to the Northern District of California because "the interests of justice" support transfer to that district—a district where this lawsuit could have been brought. *See Parallel Network Licensing LLC v. Arrow Elecs., Inc.*, No. 4:21-CV-00714, 2022 WL 1597364, at *6 (E.D. Tex. May 19, 2022) (transferring to the Northern District of California); *Nat'l Steel Car Ltd. v. Greenbrier Cos., Inc.*, No. 6:19-cv-00721-ADA, 2020 WL 4289388, at *6 (W.D. Tex. July 27, 2020) (transferring). "To determine where a case could have been brought, the movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017) (internal quotation marks and citation omitted). District courts throughout this Circuit apply the § 1404(a) public and private convenience factors in assessing transfer under § 1406(a)—with the exception that the proposed venue need not be "clearly" more convenient. *See CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869, at *6-7 (N.D. Tex. Jan. 16, 2019); *Cheetah Omni, LLC v. NP Photonics, Inc.*, No. 6:13-CV-418, 2014 WL 11709437, at *3 (E.D. Tex. Mar. 28, 2014); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (identifying the factors). Here, as discussed in more detail below, both venue and personal jurisdiction for Broadcom Inc. are proper in the Northern District of California, so this case could thus have been brought in that district. Also, the convenience factors support transfer to that district. Therefore, if the Court

27

declines to dismiss this case, the Court should transfer it to the Northern District of California.

**A.   This Action Could Have Been Brought in the Northern District of California**

This case could have been brought in the Northern District of California, as Broadcom Inc.'s principal place of business is in the Northern District of California, a relevant subsidiary (Broadcom Corp.) also has its principal place of business in that district, and significant work regarding the Accused Products was and is done in that district, including the purported acts of infringement alleged by Polaris.  Phillips Decl. ¶¶ 2-3, 7-10; 28 U.S.C. § 1400(b).

**B.   Private Interest Factors Favor Transfer to the Northern District of California**

All private interest factors favor transfer to the Northern District of California, where Broadcom Inc. has its principal place of business.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (noting that in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer").  For example, relevant witnesses are located in the Northern District of California.  Gonikberg Decl. ¶¶ 1, 6; Kalkunte Decl. ¶¶ 1, 6; Kiang Decl. ¶¶ 1, 12; Rosen Decl. ¶ 9; Phillips Decl. ¶ 9.  While they may also be located in other jurisdictions, there are no relevant Broadcom Inc. or Broadcom Corp. witnesses located in this District that could testify about the Accused Products.  Chen Decl. ¶¶ 4-5; Lustig Decl. ¶¶ 4-5; Gonikberg Decl. ¶¶ 5-6; Kalkunte Decl. ¶¶ 6-7; Kiang Decl. ¶¶ 10, 12; Rosen Decl. ¶¶ 8-9; Phillips Decl. ¶ 9; *see, e.g.*, Ex. 15, Deposition of Haim Lustig ("Lustig Dep.") at 25:20-25; Kiang Dep. at 33:13–34:10.  Despite Polaris's attempts to assert otherwise, it cannot change the fact that any witnesses associated with the Accused Products do not reside in this District.

Similarly, source code and other documentary evidence related to this case is located in the Northern District of California.  Gonikberg Decl. ¶ 6; Kalkunte Decl. ¶¶ 4-6; Kiang Decl. ¶ 12; Rosen Decl. ¶ 9; Phillips Decl. ¶¶ 9-10.  The bulk of the relevant documents related to the design,

███████████████████████████████████████████████████

development, and maintenance of the Accused Products, to the extent maintained in the United States, are maintained in San Jose, California.   Gonikberg Decl. ¶ 6; Kalkunte Decl. ¶¶ 2, 4-6; Kiang Decl. ¶ 12; Rosen Decl. ¶ 9; Phillips Decl. ¶¶ 2-3, 9-10.   Importantly, none of the relevant documents are located in this District.   *See* Chen Decl. ¶¶ 4-5; Lustig Decl. ¶¶ 4-5; Gonikberg Decl. ¶¶ 5-6; Kalkunte Decl. ¶¶ 4-7; Kiang Decl. ¶¶ 10, 12; Rosen Decl. ¶¶ 8-9; Phillips Decl. ¶ 9. Additionally, venue discovery fails to establish that the relevant documentary evidence can be accessed by anyone in this District. ███████████████████████████████████████

███████████████████████████████████████████████████████████  *See* Chen Dep.

at 24:4–25:8, 27:21–29:14, 32:5-7; Gonikberg Dep. at 33:16–34:18, 27:16-20; Kiang Dep. at 28:11-23; Kalkunte Dep. at 35:2-25. ████████████████████████████████████

███████████████████████████████████████████████████████████

To confirm, this aligns with the supporting declarations filed with this Motion, which explain that CA, the entity that operates the Plano office, has no relationship to any of the Accused Products at issue.   Chen Decl. ¶ 6; Lustig Decl. ¶ 6; Gonikberg Decl. ¶ 7; Kalkunte Decl. ¶ 8; Kiang Decl. ¶ 13; Rosen Decl. ¶ 10.   Not only is that because CA's business (i.e., software) is a fundamentally different business than the Accused Products (i.e., semiconductors), ████████████████████████

███████████████████████████████████████████████████████████

Further, to the extent that Polaris argues that Broadcom's ████████████████████████████

███████████████████████████████████████████████  could potentially

access the pertinent documents, such an argument is irrelevant ████████████████████████

███████████████████████████████████████████████████████  *See, e.g.*, Phillips

Dep. at 26:21–27:19 (███████████████████████████████████████████████).

Thus, the private interest factors favor transfer to the Northern District of California.

**C.      Public Interest Factors Favor Transfer to the Northern District of California**

Broadcom Inc.'s principal place of business is in San Jose, California.  Similarly, the principal place of business of one of the subsidiary-entities with information related to the Accused Products—Broadcom Corp.—is also in San Jose, California.  Phillips Decl. ¶¶ 2-3.  Thus, the Northern District of California has a local interest in the case because it involves adjudicating the alleged acts and consequences of its own residents.  *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  The Northern District of California also has a local interest in the case because the design, development, and marketing of the Accused Products was and/or is, in part, in that district.  Chen Decl. ¶ 3; Lustig Decl. ¶ 4; Gonikberg Decl. ¶ 4; Kalkunte Decl. ¶¶ 2, 4-5; Kiang Decl. ¶¶ 5, 7, 9; Rosen Decl. ¶ 7; *CUPP Cybersecurity*, 2019 WL 1070869, at *9.  As this case has no ties to this District, there is no local interest in maintaining the case here.

While familiarity with applicable law and conflicts of law are often considered when assessing transfer, Broadcom Inc. asserts that it is not aware of any conflicts of law and that the Northern District of California is not a stranger to patent litigation and is capable of applying federal patent laws, making that factor neutral.  Additionally, while court congestion is sometimes considered, as venue is improper in this District, Polaris's chosen forum, the standard cross-district time-to-trial comparison is inapplicable here.

At base, Broadcom Inc. and Broadcom Corp. both have a significant presence in the Northern District of California, and relevant witnesses and documents are located there.  Thus, both the private and public interest factors favor transfer to the Northern District of California.

**V.      CONCLUSION**

For the reasons provided herein, Defendant respectfully requests, based on improper venue, that the Court dismiss the first amended complaint or, in the alternative, transfer this case to the Northern District of California.

████████████████████████

Dated: May 18, 2023

*/s/ John M. Caracappa*

John M. Caracappa, *lead counsel*
Katherine D. Cappaert
Christopher A. Suarez
Benjamin R. Holt
Heather Hildreth
**Steptoe & Johnson LLP**
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone:  (202) 429-3000
Facsimile:   (202) 429-3902
jcaracappa@steptoe.com
kcappaert@steptoe.com
csuarez@steptoe.com
bholt@steptoe.com
hhildreth@Steptoe.com

Daniel F. Gelwicks
**Steptoe & Johnson LLP**
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone:  (312) 577-1300
dgelwicks@steptoe.com

*Attorneys for Defendant Broadcom Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on May 18, 2023 via email on all counsel of record.

*/s/ John M. Caracappa*
John M. Caracappa

**CERTIFICATE OF AUTHORIZATION TO SEAL**

The undersigned hereby certifies that the court has already granted authorization to seal the foregoing document and exhibits thereof, pursuant to the Protective Order in this case and Orders granting prior motions to seal in this case.

*/s/ John M. Caracappa*
John M. Caracappa